225 So.2d 170 (1969)
STATE of Florida, Appellant,
v.
Anna Lee LEWIS, Appellee.
STATE of Florida, Appellant,
v.
Willie LEWIS, Appellee.
Nos. 68-475, 68-476.
District Court of Appeal of Florida. Second District.
June 27, 1969.
Rehearing Denied August 12, 1969.
Earl Faircloth, Atty. Gen., Tallahassee, William D. Roth, Asst. Atty. Gen., Lakeland, for appellant.
Robert E. Pyle, Lake Alfred, for appellees.
LILES, Chief Judge.
Appellant appeals from an order of the trial judge granting appellees' motions to suppress evidence seized during a search conducted pursuant to a search warrant. *171 The judge ruled that this warrant was invalid. These cases have been consolidated on appeal because the same search warrant is involved in each.
The affidavit upon which the search warrant issued was executed by a deputy sheriff of Polk County. It stated that the affiant had reason to believe that a lottery was being conducted at address to be searched. This belief was based upon "information from a reliable and trustworthy confidential informant, who has given information in the past [concerning lottery law violations] that have [sic] proven to be true * * *" This unidentified informant's information that the premises were being used to sell interests in a lottery was based upon the fact that the informant himself had (1) purchased an interest in a lottery at that address, and that he had (2) personally observed other people buying such interests on "numerous occasions." The trial judge held that the search warrant issued pursuant to this affidavit was invalid and cited Borrego v. State, Fla. 1952, 62 So.2d 43; White v. State, Fla. 1950, 47 So.2d 863; and Shaw v. State, Fla. 1951, 53 So.2d 772, as authority.
The rule applied in each of those cases was that the affidavit must "state facts or sufficient reasons upon which the officer believed, or had reason to believe, that the laws were being violated by the [defendant]." White v. State, Fla. 1950, 47 So.2d 863. In applying this test we arrive at a different result than the trial judge reached in this case and must reverse.
Before comparing these cases with the instant case, we note that an affidavit based upon information received from a reliable confidential informant is proper. Harrington v. State, Fla.App. 1959, 110 So.2d 495, appeal dismissed, Fla. 1959, 113 So.2d 231. In fact, such an affidavit need not even allege that the informant is a reliable source. Ludwig v. State, Fla.App. 1968, 215 So.2d 898. In the present case the affiant did allege the reliability of the informant and tendered this as the factual bases for his belief that the building was being used for unlawful purposes.
Furthermore, we note that the rule set forth in the Borrego case, supra, to the effect that the factual basis for the affiant's belief must possess evidential quality sufficient to render it admissible into evidence at a trial of the cause, was expressly receded from in Perez v. State, Fla. 1955, 81 So.2d 201. That case demonstrates that the test to be applied is not the test of admissibility into evidence, but is whether a prudent man, knowing all the facts which the affiant knows, would conclude that the building was being used for lottery purposes. See Paula v. State, Fla. App. 1966, 188 So.2d 388.
In the Borrego, White, and Shaw cases, supra, the affiant's belief that the laws were being violated was based upon either a personal "investigation," "information" based upon another person's investigation, the "belief" of the affiant, or other equally conclusory data. No genuine underlying circumstances for these beliefs were ever stated.
In the present case, however, the affiant's conclusion that the premises were being used for lottery purposes was based upon information from an allegedly reliable informant, which in turn was based upon the direct and personal actions of the informant with regard to the alleged lottery operations. Thus the underlying factual circumstances necessary to support the affiant's belief were present in the affidavit. There is no doubt that a reasonable man, when confronted with the above factual allegations, would conclude that probable cause existed to support issuance of the search warrant.
Reversed and remanded.
MANN, J., concurs.
McNULTY, J., dissents with opinion.
*172 McNULTY, Judge (dissenting).
I recognize the august authority upon which the majority opinion is bottomed,[1] and I am aware of the chains of stare decisis which bind me. But I have never agreed with the theory that search warrants may issue solely on hearsay evidence and, since my recent ascendency to the appellate bench, this is my first opportunity to say so. I pray, then, that I be forgiven this extravagance, and will hereafter forever hold my peace.
The 4th Amendment to the Constitution of the United States, and its companion provisions in the constitutions of the various states,[2] requires that "probable cause" for a search warrant be supported by "oath or affirmation". This is an obvious safeguard against one who might arbitrarily or maliciously seek to invade the privacy of another. If the procedure approved by the majority opinion remains the law, (and it's but a late innovation in the history of searches and seizures),[3] the affiant could never be responsible, under pain of perjury, for the falsity of the "underlying facts" which give rise to probable cause. He merely swears that the informant is, to him, reliable and that said informant related to him the hearsay in question. Obviously the truth or falsity of these statements is immaterial to the truth or falsity of the "underlying facts", and they constitute no more than an assertion under oath that the affiant believes his informant. How does this support "probable cause" by "oath"? Surely the issuing magistrate himself would be without authority to issue the warrant solely on such unsworn information from the informant; and I submit that the affiant's oath to the effect that he believes his informant cannot, by some alchemistical metamorphosis, transform the informant's story into sworn testimony or the equivalent thereof.
In our eagerness to sustain a conviction in a given case or in our readiness to aid law enforcement in suppressing crime, we ought not be stampeded into diluting the constitutional provisions which were, ideologically, intended to protect the innocent while permitting conviction by due process of the guilty. Preoccupation with the latter aspect of this concept ignores the first, and may render oppressive the very thing designed to prevent oppression.
If an applicant for a search warrant is unable to corroborate, even slightly, some or all of the underlying facts related to him by his informant, and do so by a sworn statement of facts within personal knowledge, then I suggest that it's no undue burden on law enforcement to require that the confidential informant, himself, appear before the issuing magistrate to swear or affirm to sufficient underlying facts. The anonymity of the informant can still be protected;[4] and I do not construe *173 § 933.06, F.S.A. as making it incumbent on the issuing magistrate to reduce such testimony to writing if it is cumulative to the affiant's, nor does § 933.07, F.S.A. require that such informant be identified in the warrant itself.
A guilty person's rights, such as they might be, would be protected under either this procedure or under the one approved by the majority. This is so because, assuming compliance with whichever procedure is adopted, the issuance of a search warrant would be lawful; and one incriminated by a fruitful, lawful search cannot be heard to complain. On the other hand, an innocent person under the procedure recognized by the majority may be denied constitutional concern. That is to say, he may suffer the consequences of a search under such a procedure, which would of course be a fruitless search since we are assuming absolute innocence, and if such search was predicated on an unsworn false statement of underlying facts (which is only possible under the majority's rule), he would have no realistic redress in a malicious prosecution suit[5] nor, theoretically at least, had he theretofore benefitted from the constitutional safeguard requiring the oath or affirmation as a deterrent to the very thing of which he suffered the consequences.
The time appears propitious to be as solicitous of absolutely innocent persons as we are of those who are known to be guilty; and it is no argument to say, in this regard, that it's begging the question of guilt if guilt is discovered from the fruits of an unlawful search. The truth is, a fruitful search, whether lawful or unlawful, is incriminating, and only the "fair play" aspects of due process prevent the use of such evidence against an accused if it is obtained unlawfully. But he may be no less guilty in fact, and yet would be the one standing to lose nothing if the procedure endorsed by the majority remains the law.
Establishing the guilt of the defendants in the instant case is not as important, in my view, as giving full import to the constitutional safeguards against unreasonable searches.
I would affirm the Order appealed from.
NOTES
[1] Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Ludwig v. State (Fla.App.3d 1968), 215 So.2d 898; and Treverrow v. State (Fla. App.1st 1966), 184 So.2d 473; id., on cert., (Fla. 1967), 194 So.2d 250.
[2] E.g., Constitution of Florida Decl. of Rights, § 22, F.S.A.
[3] In Florida, the development appears to begin with a misconstruction, I believe, of Cooper v. State (1932), 106 Fla. 254, 143 So. 217, in which there is a patent negative pregnant upon which subsequent cases apparently rely. (See Treverrow, on cert., supra.) As a result of this reasoning a line of authority gradually arose requiring, first, that the hearsay contain "underlying facts", not conclusions; next requiring that the hearsay from the informant be not of itself hearsay (and thus hearsay on hearsay); then eliminating the theretofore assumed requirement that the evidence supporting the issuance of the search warrant be admissible evidence at a trial; and finally eliminating an apparently assumed requirement that the affiant attest to the reliability of the informant. See DeLancy v. City of Miami (Fla. 1950), 43 So.2d 856, 14 A.L.R.2d 602; and the cases cited in the majority opinion.
[4] See Treverrow v. State, on cert., supra; and Spataro v. State (Fla.App.2d 1965), 179 So.2d 873.
[5] i.e., The maintenance and proof of such an action against the informant would, under the circumstances assumed here, be extremely difficult if not legally impossible.