ON PETITION FOR REHEARING
WALDEN, Judge.
The State’s Petition For Rehearing is granted. Our opinion filed on July 14, 1970, is withdrawn and the following opinion substituted.
An automobile operated by defendant collided with a Greyhound bus killing defendant’s passenger.
Defendant was convicted of manslaughter by intoxication and manslaughter by culpable negligence. He appeals. We reverse.
Defendant’s state of intoxication was a critical and material issue. A medical witness for the State produced the only incriminating evidence on this account when he testified extensively, over defendant’s objection, about the results and significance of a blood alcohol test which had been administered to defendant shortly after the collision while he was unconscious.
The only appellate point of merit, as restated by the State, is as follows:
Whether the trial court committed reversible error by admitting into evidence, over the objections of appellant’s counsel, testimony relating to the results of a test made to determine the alcoholic content of the appellant’s blood ?
A. Whether the trial court committed reversible error by admitting into evidence the testimony concerning the blood alcohol test made on the appellant on the ground that the prosecutor admittedly failed to comply with the court’s order granting the appellant’s motion for production pursuant to Fla.Cr.P.R. 1.220(a) (2) 33 F.S.A.?
Pursuant to defendant’s proper discovery motion, the trial court entered a comprehensive order that the State at a time certain prior to trial, list and make available to defendant “* * * results or reports *45 of * * * scientific tests or experiments made in connection with the case * * The State failed to comply with this order and did not produce the blood test in question. It offered no excuse or justification for its failure.
How does the State now justify the defendant’s conviction in light of this circumstance ?
First, the State says no error was committed because the written report of the test results was apparently not formally introduced into evidence — it was only marked for identification. Well, this is novel. Dr. Schofield testified in front of the jury from the written report and thereby fully placed its contents in evidence. It was error on the part of the State and the trial court not, as a matter of the best evidence, to have had the report formally marked and received in evidence. We simply can not accept or understand how that oversight or error, albeit a trifling one, will erase or cancel the error on the part of the State in failing to comply with the discovery order and the action of the trial court in overruling defendant’s objection to the report results. This argument is patently without merit and we will not labor it further.
Lastly, the State submits that the case of Perez v. State, Fla.1955, 81 So.2d 201, authorizes the State to proceed in the fashion here reflected. We pause to record that the trial court reluctantly made the decision complained of on the basis of this case which was construed to mean that there was no obligation upon the State to comply with the discovery order and that the only avenue open to the defendant in such case was to come back pre-trial to the court and complain.
In Perez, supra, other and more compelling arguments were discussed and decided. Finally, the opinion recited that under Section 909.18, Florida Statutes 1951, F.S.A. the court ordered the State to produce “* * * objects * * * which the State [intended] to use * * * as evidence * * * upon due notice to said defendants’ attorney * * * on or before May 8, 1954.”
The opinion goes on:
“The trial commenced 18 May 1954. The record is silent as to anything done by the county solicitor or demanded by the appellant’s attorney with reference to the order between the day it was entered and the time some of the objects seized were offered in evidence at the trial. It was then that the appellant’s counsel objected to their admissibility because the state had not complied with the order, and he now argues that the overruling of his objection was error. We think it was not. The primary purpose of the statute, and the order entered pursuant to the statute, was to furnish the appellant with information that would enable him better to prepare his defense. Surely he could not have let the' time pass without insisting on the benefits of the order he had obtained, and assume that once the trial had begun the use of the evidence could be defeated on the ground that the county solicitor had not given the notice mentioned in the order.
“We agree with the trial judge that the appellant could not enter upon the trial without further attempt to get the information he had sought, and without complaint that it had not been furnished, and then have it rejected simply because the notice mentioned in the order had never been received from the county solicitor. By his conduct the appellant waived any advantages he might have gained by the inspection.” (Italics furnished.) Perez v. State, supra, at p. 204.
While it is not altogether clear we believe that it can be gleaned or inferred that the defendant in the Perez case was conversant with the “objects” and that his grievance was because the State failed to advise or give notice as to which of the objects the State expected to use. We can see and agree that a dry or naked objec *46 tion based simply on the failure to give notice, in the light of defendant’s apparent awareness of all the objects and that some or all would be used at trial, would not be efficacious and how the court could deem the error harmless.
Also, we infer from the scant recital that the circumstances were such as to put the defendant upon early notice that the State was in violation of the order and still intended to use the evidence. It was on that basis, we believe, that the Supreme Court in Perez deemed that the defendant had waived the benefits of the order by not making complaint to the court prior to trial.
Looking now to the instant case, we believe that it may be meaningfully distinguished.
Here, while there is some suggestion that defendant’s counsel had heard sometime prior to trial that a blood test had been administered to defendant, there is no showing that he knew for certain that such existed, the results, its whereabouts, or if the State intended to use it. Thus, defendant here was probably in nowise as fully advised as to the existence, nature and character of the evidence as was the defendant in Perez. There is no record suggestion of bad faith or entrapment by the defendant.
In Perez discovery was provided by statute only. But so far as we can determine the statute was silent as to the measures available to the court in the event of a failure or refusal of the party to honor the discovery order. In the instant case, however, the procedure is governed by Rule 1.-220, Rules of Criminal Procedure, and it is there provided:
“(g) Continuing Duty to Disclose; Failure to Comply. * * * If, at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from calling a witness not disclosed, or introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.” (Emphasis supplied.)
Rule 16, Federal Rules of Criminal Procedure, is quite similar. In 8 Moore’s Federal Practice — Cipes, Criminal Rules, at Paragraph 16.04(3), entitled “Continuing Duty; Sanctions for Noncompliance” the Rules Advisory Committee commented :
“ ‘Such discretion,’ according to the Advisory Committee, ‘will permit the court to consider the reasons why disclosure was not made, the extent of the prejudice, if any, to the opposing party, the feasibility of rectifying that prejudice by a continuance", and any other relevant circumstances.’ In an unusual case the court might be justified in taking the extreme measure of ordering the prosecution dismissed. Such an order would be of doubtful appealability.”
See also United States v. Padrone, 406 F.2d 560 (2nd Cir. 1969).
Here it seems that defendant acted properly in seeking information that would enable him to better prepare his defense, this being the purpose of discovery procedures in criminal cases as pronounced in State v. Perez, supra. There had been rumor of a blood test. What more or better could he have done than to apply to court that will try him for an order, as specifically authorized by the Rules, directing the state agency that would prosecute him to produce and allow him to examine the blood test. Having obtained the order, and when the state failed to produce it, what should the defendant have done? It seems to us that he would be warranted in confidently believing either that the test did not exist or that the State did not intend to use it. We can see no justification in saying that the defendant would have to return to court and make it “say it again” in order *47 for him to have a justifiable complaint about the State’s failure to obey the order.
If the State’s view of the Rule — as we understand it — is correct, then the discovery rule is worse than no rule at all as concerns the defendant whom it was designed to help. It would be better for the defendant to know from the outset that he would have to make independent discovery and that the State would divulge nothing than to be made to believe that the State would produce, pursuant to court order, only to find that the State had refused to produce for no reason and that the damaging material sought was being used against him without limitation or sanction against the State. We reject such hypothesis and say that the discovery rule should be realistically administered so as to produce the result for which it was intended. However, we caution and emphasize that every violation by the State of a discovery order does not and should not merit the rejection of the witness or evidence. All of the circumstances should be first considered and assessed as hereinafter mentioned. See Richardson v. State, Fla.App.1970, 233 So.2d 868 and Rouse v. State, Fla.App., 243 So.2d 225, opinion filed January 22, 1971, for the views of our sister court as to the proper administration of Rule 1.220, Fla. R.Cr.Proc.
We hold, therefore, that a court faced with the State’s failure to disclose should make careful inquiry as to why disclosure was not made, the extent of the prejudice to defendant, the feasibility of rectifying that prejudice by a continuance, and all other relevant circumstances. So armed, the court could then in the sound exercise of its discretion and in the language of the Rule “* * * order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from calling a witness not disclosed, or introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.” Applying this proposition to the instant case, we are of the opinion that the able trial judge erred in this instance in overruling the defendant’s objection to the use of the blood test.
The defendant’s other points are deemed to be without merit.
The Petition for Rehearing is granted. The judgment of conviction is reversed and the case remanded for a new trial.
Reversed and remanded.
REED, J., concurs.
McCAIN, DAVID L., Associate Judge, specially concurs.