# FLORIDA v. CASAL ET AL.

No. 81–2318.   Argued February 23, 1983—Decided June 17, 1983

*Carolyn M. Snurkowski*, Assistant Attorney General of Florida, argued the cause for petitioner.   With her on the briefs was *Jim Smith*, Attorney General.

*Arthur F. McCormick* argued the cause and filed a brief for respondents.

PER CURIAM.

The writ is dismissed as improvidently granted, it appearing that the judgment of the court below rested on independent and adequate state grounds.

CHIEF JUSTICE BURGER, concurring.

The Court today concludes that the Florida Supreme Court relied on independent and adequate state grounds when it affirmed the suppression of over 100 pounds of marihuana discovered aboard a fishing vessel—the evidence upon which respondents' convictions for possession and importation of marihuana were based.   The Florida Supreme Court did not expressly declare that its holding rested on state grounds, and the principal state case cited for the probable-cause standard, *Florida* v. *Smith*, 233 So. 2d 396 (1970), is based entirely upon this Court's interpretation of the Fourth Amendment of the Federal Constitution.   I write not to challenge today's determination that the state court relied on independent and adequate state grounds, however, but rather to emphasize that this Court has decided that Florida law, and not federal law or any decision of this Court, is responsible for the untoward result in this case.

The two bases of state law upon which the Florida Supreme Court appears to have relied are Art. I, § 12, of the State Constitution and Fla. Stat. § 371.58 (1977), currently codified at Fla. Stat. § 327.56 (1981). Article I, § 12, of the Florida Constitution is similar to the Fourth Amendment of the Federal Constitution. I question that anything in the language of either the Fourth Amendment of the United States Constitution or Art. I, § 12, of the Florida Constitution required suppression of the drugs as evidence. However, the Florida Supreme Court apparently concluded that state law required suppression of the evidence, independent of the Fourth Amendment of the United States Constitution.

The people of Florida have since shown acute awareness of the means to prevent such inconsistent interpretations of the two constitutional provisions. In the general election of November 2, 1982, the people of Florida amended Art. I, § 12, of the State Constitution. That section now provides:

> "This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court. Articles or information obtained in violation of this right shall not be admissible in evidence if such articles or information would be inadmissible under decisions of the United States Supreme Court construing the 4th Amendment to the United States Constitution."

As amended, that section ensures that the Florida courts will no longer be able to rely on the State Constitution to suppress evidence that would be admissible under the decisions of the Supreme Court of the United States.

In requiring suppression of the evidence, the Florida Supreme Court also may have been relying upon Fla. Stat. § 371.58 (1977), currently codified at Fla. Stat. § 327.56 (1981). That statute permits a state marine patrol officer to board a vessel for a safety inspection only if there is consent

or probable cause to believe a crime is being committed.* The Florida Legislature enacted that statute, and the people of Florida and their representatives have full responsibility for the burden it places on the State's law enforcement officers.

With our dual system of state and federal laws, administered by parallel state and federal courts, different standards may arise in various areas. But when state courts interpret state law to require *more* than the Federal Constitution requires, the citizens of the state must be aware that they have the power to amend state law to ensure rational law enforcement. The people of Florida have now done so with respect to Art. I, § 12, of the State Constitution; they have it within their power to do so with respect to Fla. Stat. § 327.56 (1981).

---

*In contrast, 19 U. S. C. § 1581(a) provides: "Any officer of the customs may at any time go on board of any vessel . . . at any place in the United States or within the customs waters . . . and examine, inspect, and search the vessel . . . and every part thereof. . . ." See *United States* v. *Villamonte-Marquez, ante,* p. 579.